Robin C. Emmans
2nd Street Law PLLC
217 N. 2nd Street
Yakima, WA 98901
(509) 575-0372
Of Attorneys for Jordan Stevens

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>JORDAN EVERETT STEVENS,<br><br>Defendant(s). | Case No. 19-CR-2038-SAB<br><br>MOTION FOR NEW TRIAL<br><br>With oral argument 12-1-2021 3:00 P.M. Yakima |

## MOTION

COMES NOW the defendant, Jordan Everett Stevens, through counsel, and moves this court, pursuant to FRCrP 33(b)(1) for a new trial. This motion is based upon the declarations regarding new evidence filed herewith and the memorandum set forth below. A hearing date of December 1, 2021 is suggested. Ms. Kane, of counsel for Mr. Stevens, will be making the defense argument.

MEMORANDUM

Statement of facts

    Jordan Stevens was convicted June 10, 2021 of First Degree Murder and Discharging a Firearm During and in Relation to a Crime of Violence. ECF 153. This was the culmination of a trial that began June 7, 2021. During the trial, on the morning and afternoon of June 9th, defense counsel Robin Emmans was cross-examining SA Clinton Barefoot. It was during the afternoon section of cross examination that SA Barefoot uttered his opinion on Mr. Stevens' guilt and asserted that Mr. Stevens had killed witnesses, which Ms. Emmans did not hear, but Mr. Klein objected to. ECF 165, p. 226-227, ll. 21-25, 1-4. Examination continued after the objection. Ultimately, the court called a recess for the day early, likely in response to Ms. Emmans getting bogged down in notes and unable to find a notepad. ECF 165, p. 234, ll. 1-11. The following day, the defense filed a motion for either mistrial or a corrective instruction regarding SA Barefoot's opinion statement, ultimately withdrawing the mistrial request and maintaining the request for a corrective instruction. ECF 166, p. 4-5, ll. 15-25, 1-8.  Also, due to COVID-related protocols, Ms. Emmans notified the court that she had been unwell, but did not have a fever and did not believe there was any risk of COVID infection or exposure. ECF 166, p. 4, ll. 4-14. Witness examinations continued thereafter. The transcript of both days has been filed, with cross examination of SA Barefoot at ECF 165, pp. 70-114, 200-234, and ECF 166, pp. 14-53, pp. 63-66.

In mid-July, Ms. Emmans discovered that she had mixed up medication for depression and anxiety with a blood pressure medication. Based upon pill counts, the mix-up would have occurred about a week before Mr. Stevens' trial began. On August 11, Ms. Emmans was able to meet with her prescribing ARNP, who confirmed that during the trial, medication levels for the anti-depressant were fading, and she was taking an unneeded blood pressure medication, with effects as described in the attached declarations. The ARNP also confirmed that Ms. Emmans' symptoms in court and after court on June 9th were consistent with a panic attack.

Applicable Law

Every defendant has the right to the effective assistance of counsel, under the 6th Amendment to the United States Constitution. This motion is raised at an unusual procedural stage, in the time between conviction and sentencing, based upon information affecting the fitness of counsel during trial, which was not discovered until more than 14 days after the verdict. For this reason, the motion for a new trial presents as the appropriate mechanism for raising the issue, rather than an appeal or later collateral attack. Because this issue fits best as an ineffective assistance of counsel claim, it will be analyzed here under the Strickland standard. Dows v. Wood, 211 F.3d 480, 482 (9th Cir. 2000) ("Ineffective assistance of counsel claims are analyzed under the Strickland framework, which is considered to be clearly

established federal law, as determined by the Supreme Court of the United States for purposes of 28 U.S.C.S. § 2254(d) review"). The Strickland framework is as follows:

> Under Strickland, we evaluate (1) whether counsel's conduct was deficient - i.e., seen objectively, was out of "the wide range of professionally competent assistance" and, if so, (2) whether it was prejudicial to the defendant - i.e., was there a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 691, 694; see also Smith v. Robbins, 528 U.S. 259, 145 L. Ed. 2d 756, 120 S. Ct. 746, 764 (1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Dows v. Wood, 211 F.3d 480, 484-85 (9th Cir. 2000). A mental disease or defect is not cause for a finding that counsel's performance was per se ineffective. Id., at 485. However, defense counsel must be able to "subject the prosecution's case to meaningful adversarial testing." Dows v. Wood, 211 F.3d 480, 485 (9th Cir. 2000). In other settings, it has been remarked by the United States Supreme Court that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested," Davis v. Alaska, 415 U.S. 308, 316 (1974), and that denial of the right of effective cross-examination is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." Id., at 318.

Argument

During day 3 of Jordan Stevens' trial, Ms. Emmans handled cross examination of SA Clint Barefoot and of the pathologist. Agent Barefoot's testimony was divided into morning and afternoon sessions in order to accommodate other witnesses' travel

arrangements. During the afternoon session, Ms. Emmans became confused, lost the thread of the cross examination at times, and ultimately was staring at notes blankly when the court finally called an early recess for the afternoon. During that time, the witness expressed his opinion that Jordan Stevens was guilty of the crime charged and went on to assert that Mr. Stevens had killed witnesses. Mr. Klein objected, as Ms. Emmans did not hear the statement. In a murder trial, during the cross examination of the government's lead investigator, a lapse of concentration and focus by the examining attorney presents a serious risk to the fairness of proceedings. It is an essential part of "subject[ing] the prosecution's case to meaningful adversarial testing." Indeed, in Mr. Stevens' case, Ms. Emmans' lapse led to statements by the witness that on their own could have been cause for mistrial. The defense at that time decided to maintain a request for a curative instruction rather than a motion for mistrial, but that decision was made without knowledge of Ms. Emmans' impairment. Taken as a whole, the testimony of Agent Barefoot on cross examination likely had a significant, prejudicial effect on the jury's decision to convict Mr. Stevens.

CONCLUSION

For the above reasons, Defendant respectfully requests that this court grant him a new trial in the above-captioned matter, as to Counts 3 and 4.

1  Respectfully submitted October 5, 2021

*s/ Robin C. Emmans*
Robin C. Emmans, WSBA 37085
2nd Street Law, PLLC
217 N. 2nd Street
Yakima, WA 98901
(509) 575-0372
Fax: (509) 452-6771
robin.emmans@secondstreetlaw.com
Of Attorneys for Jordan Stevens

CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notifications of such filing to AUSA Benjamin Seal and AUSA Richard Burson.

*s/ Robin C. Emmans*
Robin C. Emmans, WSBA 37085