# EXHIBIT C
Declaration of Ulvar Wallace Klein

Declaration of Ulvar Klein

I have been a practicing attorney in the field of criminal law since 1994. I started as a prosecuting attorney for Yakima County and worked within that office until leaving in 2001. While I was a prosecuting attorney I had extensive trial experience in the Yakima County District Court, the Yakima County Juvenile Court and in the Yakima County Superior Court. As a sexual assault prosecutor most of the trials I did were rape or molestation cases. However, I also prosecuted other serious felony cases including homicides and assaults.

Upon leaving the prosecutor's office I began doing general criminal defense with the Adam Moore Law Firm. In that practice I continued to gain substantial felony trial experience in criminal cases in Yakima, Kittitas, Klickitat and Benton counties. While with the Adam Moore Law Firm I was involved in representing multiple clients accused of Murder and dozens of others accused of serious violent felonies. Many of these cases were resolved with exceptionally good results. Some of them went to trial. Usually, I was the only attorney on the case. At other times Adam Moore would take the case to trial with me. From Adam Moore and also from the experience of handling dozens of serious felony trials I feel comfortable attesting that I have become a fully competent trial attorney.

Since Adam Moore retired in 2016, I have continued in practice with Robin Emmans. We now call ourselves 2nd Street Law. Robin is an exceptionally well qualified attorney having also learned for years from Adam Moore. Her strongest talent is her extraordinarily strong writing skills, but she has also done remarkably well when in trial. Among her accomplishments is when Robin and I have achieved acquittals for two different defendants accused of Murder. In each case there was a claim of self-defense. In each case Robin and I divided the work and shared the labor. In each case I was extremely proud of the work we did to get the hard to achieve Not-Guilty verdicts.

For the Jordan Stevens case Robin and I were supplemented with attorney Karla Kane as a mentee. During the time running up to the trial the team's preparation seemed ideal. The roles and assignments were divided easily with each of us getting to play to our strengths. For myself that was closing argument, the cross of Jasmine McCormick, a key witness, and several peripheral witnesses. Robin Emmans elected to handle the opening statement and the cross examination of Special Agent Barefoot as her focus. Because of Robin Emmans' familiarity with medical science she also had the pathologist and other peripheral

witnesses including the presentation of drone footage.  Karla Kane accepted the task of handling many of the peripheral officers as well as the cross of a hostile witness Samantha Tainewasher and the more friendly cross of Tim Casteneda.

During the trial the defense seemed to be tracking to all of the hours spent in preparation.  The opening statement went well from Ms. Emmans.  The early cross examinations also seemed to go very well.  However, there came a time when an unusual and unexpected struggle began with the introduction of the drone footage.  In conferences at the office the team had decided what parts of the aerial footage were helpful.  While there were approximately thirty passes of the drone recorded and available only a handful were needed to show the lay out of the location of the homicide.  During the presentation of the aerial passes which were selected Ms. Emmans got bogged down trying to establish the directionality of the various images and their relationship to each other.  What should have taken a few minutes became an unnecessarily laborious event.

This delay and confusion in the presentation of the drone footage was entirely inconsistent with Ms. Emmans' prior work in other trials.  For example, in the homicide case of <u>State v, Helland</u>, I watched Ms. Emmans do an amazing cross examination of a pathologist where numerous wound trajectories were involved

15

in a body that was rotating as it was being shot seven times. In a lengthy, but extremely well organized presentation dozens of images were integrated into a single comprehensible whole explaining to the jury the defendant's unlikely, but entirely plausible defense. That level of Ms. Emmans high focus was clearly absent in the presentation of the drone footage. There was no obvious prejudice to the defense in this disorganization as the evidence eventually found its way into the record. It is, however in hindsight a clue that things were not as they should have been.

The most telling signs of a problem in the presentation of this trial of Jordan Stevens arose in the cross examination of special agent Barefoot. The defense theory in this case focused on the belief that Special Agent Barefoot "rushed to judgement" assuming Jordan Stevens to be guilty. From there he tainted all of the witnesses by telling them what he believed to have happened and then asking the witness if that was correct. The agent's reports made it clear that he had done so. To the defense this was appalling police misconduct. Getting this to the jury without opening floodgates was likely to be a challenge.

As the cross examination of special agent Barefoot developed it became clear that the agent was looking for any chance to cross the appropriate

boundaries and speak to the ultimate issue for the jury. The defense needed the agent to confirm his bias and that he did in fact tell the witnesses what he believed to be true. Instead, the agent spoke to his supposed knowledge and certainty of the defendant's guilt. The agent also spoke of Mr. Steven's killing witnesses and other unproven alleged prior bad acts. The agent repeatedly infected the process with proclamations of the defendant's culpability which the agent certainly knew to be off limits and inadmissible. Ms. Emmans was not up to the challenge of controlling the special agent's desire to infect the proceedings.

At one point during the agent's most disgraceful declaration of the defendant's guilt I objected even though I was not the acting counsel at that time. The reason for the objection was the outrageousness of the statement of the special agent about the defendant's guilt as well as Ms. Emmans failure to recognize the level of impropriety involved. I have since been told that Ms. Emmans had not heard what was said by the agent as she was struggling to find her next question. The way she was functioning at the time I do not think it would have mattered. Despite weeks of preparation for this moment she was simply focused on getting into evidence the cause/effect of the agent's contamination of the process. She was not listening to what was being said as the agent endeavored to trample on Jordan Stevens due process rights or any chance

17

he might have at having a fair trial. Having tried many cases in state court and several in federal court I am familiar with the ways that law enforcement seeks to pollute the process. This issue of "vouching" was even briefed early on in the process before the Covid delays set in.

Recognizing that significant intentional abuse by the agent had occurred the issue of requesting a mistrial had to be considered. At the evening recess I discussed with Jordan what was going on and discussed with him my thoughts. At this time I had no knowledge of any issues of cross medication nor could I assess with certainty how much of the damage was inevitable considering our theory of the case and the need to get in the agent's taint of the witnesses. In the end I advised Mr. Stevens that despite what had happened I thought we were doing fairly well. Things had gone well overall and the cross of Jasmine was very good. I did not want to lose this momentum and I thought that we had done well enough and that we could continue to present our case as we wanted. Upon this advice Mr. Stevens did not request a mistrial.

The next morning things did not improve in a substantial manner. Agent Barefoot was still on the stand. There was a hope of containing any damage done. However, that did not occur and during the cross as I felt a need to

18

interrupt Ms. Emmans to try to organize the damage control. Our client had instructed us that we could do whatever was needed to get in Agent Barefoot's awful and tainting behavior. However, the cost of each question kept mounting.

Eventually, the cross ended with the agent's taint exposed, but also his extreme bias against Jordan Steven's as a witness killer and inherently evil person which no jury could ignore.

Despite our best efforts from this point forward Mr. Stevens was convicted.

I declare under the penalties of perjury that the foregoing is true and correct.

Signed at Yakima, Washington, October 5, 2021:

Ulvar Klein

Attorney for Jordan Stevens

19